```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────
NULIFE ENTERTAINMENT, INC.,
                                            09 Civ. 1277 (JGK)
                Plaintiff,
                                            OPINION AND ORDER
      - against -

TORRES, ET AL.,

                Defendants.
───────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Nulife Entertainment, Inc. ("Nulife"), brought this action against the defendants, Hector Torres, Ricardo Luis Porrata, and an unnamed corporation owned by Torres and Porrata. The complaint alleges breach of contract, Lanham Act trademark violations, and state law claims of trademark infringement and unfair competition. The defendants move to stay the action pending arbitration pursuant to § 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, on the ground that the contract at issue contains an arbitration agreement that applies to this dispute. The defendants also move for attorneys' fees and costs pursuant to the contract between the parties.

I

The Court accepts the following facts for the purposes of this motion.

The plaintiff owns certain rights in the Salsa music group N'Klabe. (Compl. ¶ 1.) Defendant Torres entered into the Exclusive Recording Artist Agreement (the "Agreement") with Nulife to join N'Klabe dated October 15, 2003. (Compl. ¶ 55; the Agreement is attached as Ex. B to the Torres Decl.) Defendant Porrata also joined the group through an amendment to the Agreement dated May 4, 2005. (Compl. ¶ 54; Pena Aff. Ex. A.)

The Agreement contains an arbitration clause, which provides that

> [w]ith the exception of any breach by you [the individual defendants] of your exclusivity to Label [Nulife] hereunder, any controversy or dispute arising out of or related to this Agreement or the breach or alleged breach of any provision of this Agreement shall . . . be submitted . . . to arbitration.

(Agreement ¶ 22(g).) The arbitration clause also provides that "[t]he prevailing party(ies) in any such arbitration shall be entitled to recover from the other party reasonable attorneys' fees and costs incurred in connection therewith." (Agreement ¶ 22(g).)

The Agreement provides that the "Label [Nulife] engages you [the individual defendants] to render your exclusive recording services individually and collectively as part of the musical performance group . . . known as 'N'Klabe'." (Agreement ¶ 1(a).) It states that

2

> [i]t is essential to this Agreement that during the Term . . ., Label and its representatives will be exclusively entitled to your recording services, exclusively entitled to "shop" . . . you and any Masters to Distributors, and exclusively entitled to negotiate with Distributors for purposes of obtaining a Distribution Agreement.

(Agreement ¶ 1(b).)  The Agreement also includes a notice that "THIS AGREEMENT HAS BINDING LEGAL EFFECT AND GRANTS CERTAIN RIGHTS TO LABEL FOR, AMONG OTHER THINGS, YOUR EXCLUSIVE RECORDING SERVICES."  (Agreement 16.)

The Agreement also reserves to Nulife certain trademark rights to the "N'Klabe" name and limits the rights of leaving members of the group.  It provides that

> no Leaving Member shall make any use of the name "N'Klabe" (or other Group name) or any such other name under any circumstances other than in good faith to reference or indicate her former membership, participation, and/or association with the Group.

(Agreement ¶ 20(c)(i).)

Defendants Torres and Porrata were members of N'Klabe until approximately December 2008, when they broke away from the group and allegedly began performing as the "I Love Salsa Orchestra." (Compl. ¶¶ 41, 44-45.)  Nulife points out that "I Love Salsa" is the title of one of N'Klabe's most popular albums and claims that the "I Love Salsa" name "is often used interchangeably" with "N'Klabe" to reference the group. (Compl. ¶ 2.)  Nulife alleges that by using the name "I Love Salsa Orchestra," the defendants are "purposefully attempting to confuse the public

3

and diminish [the] Plaintiff['s] rights." (Compl. ¶ 5.) Therefore, Nulife claims that the defendants breached their obligations as leaving members of the group by using the "I Love Salsa" name.

The plaintiff also claims that the defendants breached the Agreement by refusing to perform at scheduled N'Klabe shows in December 2008 and "manifest[ing] their intent to perform independently of N'Klabe." (Compl. ¶¶ 40-41.) Nulife also alleges that the defendants have breached the Agreement by forming "an independent publishing company" and entering into agreements with, and receiving income from, others in the music business. (Compl. ¶¶ 37-39, 98-99.)

In addition to its breach of contract claims, Nulife alleges that the defendants violated the Lanham Act through their use of the "N'Klabe" trademark. (Compl. ¶¶ 106-107.) Finally, Nulife also alleges various New York state law claims for trademark infringement and unfair competition based on the defendants' use of the "I Love Salsa" and "N'Klabe" names and their alleged efforts to compete with N'Klabe. (Compl. ¶¶ 111-29.)

II

A

While the Agreement in this case contains a New York choice-of-law clause (Agreement ¶ 22(b)), "[w]hether the parties have agreed, by virtue of an arbitration agreement covered by the FAA, to submit a dispute to arbitration is governed by federal law."[1]  Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 133 (2d Cir. 1996); see also Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987).  The FAA creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  Generally applicable state contract laws, including defenses, can be applied to arbitration agreements as long as the state laws do not treat arbitration agreements differently from other contracts.  See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45-46 (2d Cir. 1993) (citing Perry v. Thomas, 482 U.S. 483, 492 n.9 (1987)); see also Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010).

---

[1] The parties do not dispute that the Agreement in this case is governed by the FAA.  The FAA applies to any contract involving commerce among the several states or with foreign nations that contains a written arbitration agreement.  9 U.S.C. §§ 1-2; Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010).

As the Court of Appeals has noted, "[t]he Federal Arbitration Act requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (per curiam) (internal quotations and citations omitted).

The relevant section of the FAA states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Courts must address four factors in determining whether to stay an action pending arbitration: "[F]irst, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration." Genesco,

6

815 F.2d at 844 (internal citations omitted); see also Anonymous v. JP Morgan Chase & Co., No. 05 Civ. 2442, 2005 WL 2861589, at *3 (S.D.N.Y. Oct. 31, 2005).

In this case, the only dispute is the scope of the arbitration provision set out in paragraph 22(g) of the Agreement.  Whether an agreement to arbitrate governs a particular dispute is essentially a matter of contract interpretation.  See Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995) ("Federal arbitration policy respects arbitration agreements as contracts that are enforceable in the same way as any other contract.").  Any doubts about the scope of arbitrable issues should be resolved in favor of arbitration, including when "the problem at hand is construction of the contract language itself."  Cone, 460 U.S. at 24-25; see also Orange County Choppers, Inc. v. Goen Techs. Corp., 374 F. Supp. 2d 372, 374 (S.D.N.Y. 2005).

In this case, the arbitration provision covers "any controversy or dispute arising out of or related to this Agreement," with the exception of "any breach by you [the individual defendants] of your exclusivity to Label [Nulife] hereunder."  (Agreement ¶ 22(g).)  Aside from the exception provided in the first clause of the arbitration provision, this clause is the paradigm of a broad arbitration agreement and the allegations in Nulife's complaint would be clearly covered by it

7

and would be presumptively arbitrable.  See Collins & Aikman Prods., 58 F.3d at 20; Orange County Choppers, 374 F. Supp. 2d at 374 ("The existence of a broad arbitration clause creates a presumption of arbitrability . . . .").

Nulife argues that the disputes raised in its complaint are not arbitrable because the arbitration clause's "exclusivity" exception applies.  Nulife urges the Court to adopt a broad interpretation of "exclusivity" for purposes of the arbitration clause.  Nulife argues that the arbitration clause's reference to "exclusivity" refers to not only Nulife's explicit right to the defendants' exclusive recording services, but also refers to Nulife's allegedly exclusive right to certain intellectual property and other contractual obligations owed by the defendants to Nulife.  Nulife claims that the defendants' alleged failure to perform, their formation of an independent publishing company, their receipt of income from other music industry sources, and their use of the "I Love Salsa" name all constitute violations of the defendants' contractual exclusivity obligations to Nulife.  Nulife argues that because its complaint is based solely on these alleged breaches of exclusivity, the arbitration clause's exception should apply.

However, the plaintiff's interpretation of the arbitration clause is untenable in light of the Agreement as a whole.  See United States v. Hamdi, 432 F.3d 115, 123 (2d Cir. 2005) (noting

8

that a basic principle of contract law is that contracts are to be interpreted as a whole).  While the arbitration clause does not specify the scope of the "exclusivity" to which it refers, it is plain that the rest of the Agreement only refers to "exclusivity" in the context of the defendants' recording services obligations and other limited items in paragraph 1(b) of the Agreement.  The Agreement does not refer to any exclusivity obligation relating to the defendants' ability to give musical performances, the defendants' ability to create an independent publishing company, their ability to receive income from other sources, or the defendants' use of "N'Klabe" and related names.  These activities may be in breach of the Agreement, but they are not within the exclusivity exception of the arbitration clause.  In light of the entire Agreement, it is clear that the arbitration clause's exception refers to any potential breach by the defendants' of their exclusive recording services obligations to Nulife.

All of the disputes raised in Nulife's complaint, therefore, are subject to arbitration unless Nulife alleges that the defendants violated their exclusive recording services obligations.  One paragraph of Nulife's complaint does allege that the defendants "are in violation of other contractual rights respecting the exclusivity of performing, publishing and recording rights of N'Klabe and Plaintiff."  (Compl. ¶ 6.)

9

However, Nulife does not plead facts showing that the defendants have recorded with any other company or have done anything else to breach Nulife's exclusive entitlement to the defendants' recording services. Therefore, the arbitration clause's exception does not apply and the disputes in this action are subject to arbitration.

In this case, the defendants initially moved for a stay pursuant to 9 U.S.C. § 3, and, at oral argument, sought to have the case dismissed without prejudice. "A district court may dismiss a suit where all of [the] plaintiff's claims against [the defendant] are subject to arbitration," even if the defendants have not moved to dismiss. See Builders Group LLC v. Qwest Commc'ns Corp., No. 07 Civ. 5464, 2009 WL 3170101, at *6 (S.D.N.Y. Sept. 30, 2009) (internal citation and quotation marks omitted); see also Lewis Tree Serv., Inc. v. Lucent Techs., Inc., 239 F. Supp. 2d 332, 340 (S.D.N.Y. 2002) (finding that where "no useful purpose will be served by granting a stay" the action should be dismissed). Because all of the disputes raised in the plaintiff's complaint in this case are subject to arbitration and no purpose will be served by a stay, the plaintiff's complaint is dismissed without prejudice.

B

Finally, the defendants move for attorneys' fees and costs in connection with making this motion, pursuant to

the Agreement's arbitration clause, which provides that "[t]he prevailing party(ies) in any such arbitration shall be entitled to recover from the other party reasonable attorneys' fees and costs incurred in connection therewith." (Agreement ¶ 22(g).) While this motion is arguably in connection with any future arbitration between the parties, it is clear from the Agreement that only the prevailing party "in any such arbitration" shall be entitled to fees. Because neither party has yet prevailed in arbitration, fees and costs cannot be awarded pursuant to the Agreement. See Flowserve Corp. v. BMCE, Inc., No. 05 Civ. 8075, 2008 WL 5429874, at *2 (S.D.N.Y. Dec. 22, 2008) (denying party's motion for fees based on similar clause after judgment was entered in party's favor in district court). There is no agreement between the parties that the prevailing party is entitled to costs on motions made in this Court, and there is no other basis to award fees and costs. Therefore, the defendants' motion for fees and costs is denied.

## CONCLUSION

For the reasons stated above, the plaintiff's complaint is **dismissed without prejudice**. The defendants' motion for attorneys' fees and costs is **denied.** The Clerk is directed to

enter Judgment and to close this case. The Clerk is directed to close Docket No. 3.

**SO ORDERED.**

Dated: New York, New York
March 23, 2010

_____
John G. Koeltl
United States District Judge